# HOWELL v. HESS.

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; DILIGENCE; PRINCIPAL
AND AGENT.

1. Where the application of one of the parties to an interference is a
   division of an earlier application filed before the filing date of his ad-
   versary, the burden of overcoming this earlier date is on the latter.

2. The mere making of a model of a device will not amount to a reduction to practice of the invention embodied in it, where the model represents a device intended to be used as a part of a complicated machine, and the practical usefulness of which depends upon a test in that machine. (Following *Hammond* v. *Basch*, 24 App. D. C. 469.)

3. Attempts by an inventor to sell his invention relating to typewriters to a typewriter manufacturing company between the date of conception and the date of the filing of his application, about a year and a half afterwards, do not show such diligence as will entitle him to an award of prority over another who, during that time, conceived the invention, and, three months before the other assigned to the typewriter company, filed his application.

4. Where a typewriter manufacturing company, after declining to purchase an invention and returning a model of the device to the inventor, adapted the invention to one of its typewriters, and constructed a machine embodying it, and then purchased the invention, and procured an assignment of it, the company cannot be said to have been the agent of the inventor in reducing the invention to practice, so as to make such reduction enure to his benefit, in an interference between him and another inventor of the same device. (Following *Hunter* v. *Stikeman*, 13 App. D. C. 214, and *Robinson* v. *McCormick*, 29 App. D. C. 98, and distinguishing *Shuman* v. *Beall*, 27 App. D. C. 324.)

No. 370.    Patent Appeals.    Submitted May 15, 1907.    Decided December 11, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Affirmed.*

The facts are stated in the opinion.

Mr. *Harold Binney* and Mr. *Herbert G. Ogden* for the appellant.

Mr. *William W. Dodge,* Mr. *Daniel A. Carpenter,* and Mr. *Jacob Felbel* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

This is an appeal in an interference proceeding involving priority of invention of a dust shield or guard, the purpose of which is to protect the pivots of the type bars of a typewriter from dirt and grit proceeding from erasures from the platen of a front strike typewriter falling upon the segment upon which the type bars are pivoted.

The issue is defined as follows:

"1. In a typewriting machine, the combination of a type bar formed with a recess therein, and a dust shield for the bearing of said type bar, said shield being adapted to be received within the recess in said type bar.

"2. In a front strike typewriting machine, the combination of a type bar segment, a series of segmentally arranged type bars pivoted to said segment and each provided with a recess therein, and a segmental strip that covers the pivot bearings of said bars and is adapted to extend into the recess in each type bar, and constitutes a dust guard to prevent the admission of dust or grit to said pivot bearings.

"3. In a typewriting machine, the combination of a pivoted type bar, and a dust shield to prevent the admission of dust to the pivot bearing of the type bar, said type bar being formed to receive the dust shield when the bar is in the printing position so as to enable the shield to cover the pivot bearing and not interfere with the printing movement of the bar.

"4. In a typewriting machine, the combination of a pivoted type bar having a notch or recess, and a dust shield which lies within said recess when the type bar is in its printing position.

"5. In a writing machine, the combination of the platen, the type bar segment, type bars pivoted therein and notched or bent to form a recess in their front edges adjacent the pivots, and a shield or guard located above the pivots, the front edge of which enters said recesses or notches as the type bars approach the printing point.

"6. In a typewriting machine, the combination of a pivoted

type bar formed with a recess therein, and a dust shield for the bearing of said type bar located in close proximity to and partially enclosing said bearing, said shield being adapted to be received within the recess in said type bar."

The application of Charles W. Howell, Jr., was filed December 26, 1901. Edward B. Hess's application filed June 30, 1903, is a division of an earlier one filed August 28, 1901. The burden of overcoming this earlier date was cast upon Howell. The tribunals of the Patent Office concurred in awarding priority to Hess, and the case is here on final appeal from the Commissioner.

Hess claimed conception, disclosure, making of drawings, and model in September, 1900. Without finally deciding whether this date was sufficiently proved, the Patent Office tribunals found it sufficient, in their view of the merits of the case, to give Hess the date of his application, of August 28, 1901. They also agreed in giving a date of conception to Howell, as claimed by him, in the spring of 1900. The award against him was based on his want of diligence in perfecting his invention before and at the time that Hess entered the field.

It is now contended, apparently for the first time, as the decisions below contain no mention of it, that the model made by Howell in the spring of 1900 was such a complete device as of itself to amount to a reduction to practice. It is sufficient to say that, in our opinion, it was not one of those simple devices, complete in itself, the mere production of which readily demonstrated its practical utility. It was, as called in the preliminary statement, a model representing a device intended to be used as a part of a complicated machine, and the practical usefulness of which depended upon a test in that machine. *Hammond* v. *Basch,* 24 App. D. C. 469, 474.

According to the testimony of Howell, this first structure, which included a lever mechanism for the type bars, as well as the dust shield, was submitted to the Underwood Typewriter Company immediately after its construction, in the spring of 1900. Nothing was done in regard to purchasing or using the invention, and Howell inquired about it during the summer.

It was, during the time, shown by an officer of the Underwood company to the mechanic of the Wagner company—a subordinate corporation of the Underwood company,—who did not approve the key mechanism. Nothing more was done until late in December, 1900, when Howell was sent for by the president of the Underwood company, who told him his patent solicitors had reported it unpatentable. Howell said that he had called on the solicitors, and he agreed with them that the key lever mechanism would infringe Felbel's patent. He said also that [one of] the solicitor [s] was of opinion that there was not enough in the dust guard to apply for a patent on alone. Underwood offered Howell some compensation for his work, which Howell refused. Howell then took the model home, and negotiations ended, until about the last of November, 1901, when Underwood called and obtained from Howell an agreement to assign the invention to the Wagner company. It appears from the testimony of the representative of the Wagner company that the dust guard feature was disclosed to the factory foreman,— the model having been shown by an agent of the Underwood company,—who set about adapting it to an Underwood typewriter, and completed it, and other parts of a new model machine, about March, 1901. The construction of this new machine was proceeded with and completed about November 1, 1901.

While Howell was doing practically nothing towards perfecting his machine, reducing it to actual practice, or taking steps to secure a patent, Hess entered the field, and, three months before Howell assigned to the Wagner company, filed his application for a patent. Undoubtedly the tribunals of the Patent Office were right in holding that, so far as the acts of Howell were concerned, there was a failure of due diligence.

Assuming that what the Wagner company did between April and November, 1900, amounted to a reduction of the invention to practice, it is earnestly contended that this was for, and enured to the benefit of, Howell.

We cannot agree with this contention. Taking the most liberal view of the evidence, the case falls within the principle declared in *Hunter* v. *Stikeman,* 13 App. D. C. 214, 226, where

it was said by Chief Justice Alvey: "It is a well-settled principle in the patent law, that while that law accords the right to a patent to the later applicant who connects by due diligence a prior conception, the reduction to practice must be by the applicant himself, or by his authorized agent, and not by some other third party. It is not enough to entitle an applicant to a patent that someone else has shown the practicability of the invention by reducing it to practice. The work of such third party will not be taken as sufficient to relieve the applicant of the consequence of his own want of diligence."

We think it clear that, whatever the motive of the Underwood or Wagner company in undertaking to utilize the invention in one of their machines, after declining to purchase, and returning the model to the inventor, they were not acting as his agents. That they subsequently purchased and procured an assignment of the invention does not affect the operation of the rule. *Robinson* v. *McCormick,* 29 App. D. C. 98, 111. The facts are essentially different from those in the case relied on by the appellant,—*Shuman* v. *Beall,* 27 App. D. C. 324, 328. In that case the inventor was in the employ of the corporation which reduced the invention to practice, had promised its officers a large interest in it, and had been led to believe that everything was done in the joint interest; and the evidence showed a deliberate effort to defraud him by colluding with another who obtained his knowledge from the true inventor.

The decision must be affirmed. The clerk will certify this decision to the Commissioner of Patents.          *Affirmed.*